CASE 66—ORDINARY—FEBRUARY 18.

# City of Paducah v. Calhoun.

78 323
d113 460

APPEAL FROM M'CRACKEN COURT OF COMMON PLEAS.

1. The proper construction of section 114 of the charter of the city of Paducah is, that the city attorney may cause to be issued a *capias pro fine* requiring—1st, confinement in the city work-house; 2d, confinement in the county jail; 3d, confinement at work on the streets until fine and costs are paid.

2. If an offender be delivered over to either the first or third under such a capias. the power of the city clerk to coerce the payment of his fees by *fi. fa.* is taken away by this act of the city, and it becomes, by implication, debtor to the clerk for his fees in the case.

3. The obligation in such case to pay the clerk is as obvious as if the city had received the fine and costs by execution under the direction of the city attorney.

L. D. & W. L. HUSBANDS FOR APPELLANT.

Even if convicts had been compelled to work out their fines and costs due from them, appellee cannot recover his fees from the city. (Charter city of Paducah, Acts 1871, vol. 1, 155, secs. 100, 114, 181; Gen. Stat., 479; 13 Bush, 221; sec. 110, City Charter; Dillon on Mun. Cor., 169; Wortham v. Grayson County Court, 13 Bush.)

2. Appellant denies that any such did work, and there is no sufficient proof of the allegation.

HENRY BURNETT AND BARR, GOODLOE & HUMPHREY FOR APPELLEE.

1. That the services mentioned in the petition were rendered is fully shown.

2. The appellant, by its own act, put it out of the power of appellee to collect his fees by ordinary execution, choosing to take entire control of the fines and costs; and whether the fines and costs were worked out or not, the city is bound to pay the clerk the fees of his office. (Session Acts, 1871, 178, sec. 110; City Charter, sec. 114; Crim. Code, sec. 304; Gen. Stat., 744; Russell v. Muldraugh's Hill T. P. R. Co., 13 Bush, 307; Coleman's ex'r v. Meade, Ibid, 358; Judge v. Bosswell, Ibid, 67; Comm., &c., v. Williams, 14 Bush, 297; Williams v. Rogers, Ibid, 776; City Charter, sec. 10; Murphy v. City of Louisville, 9 Bush, 198; Ordinances of Paducah, Nos. 24 and 25; Gen. Stat., 479.)

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

The appellee, clerk of the city court of Paducah, brought. an action against the city for fees claimed to be ·due him for· services in various prosecutions, in the name of the Commonwealth, for breaches of the peace and other violations of law within the city limits, and, the law and facts being submitted to the court, without the intervention of a jury, judgment was rendered in his favor for $981.80. This appeal is prosecuted to reverse that judgment.

Section 181 of the charter of the city, approved February 11, 1871, provides that the clerk "shall charge and· receive the same fees which are allowed by law to the clerk of the McCracken Circuit Court for like services; and when he shall perform services, for the payment whereof no fee is fixed by law, he shall charge and receive such fees as shall be adjudged reasonable, and be allowed by the judge of his. court; and in addition to the fees of his office, the common council may fix his salary, to be paid quarterly out of the· city treasury, at not more than five hundred dollars."

Section 110 reads: "The fines and forfeitures recovered. in the city court, in the name or in favor of the Common-. wealth of Kentucky, or in the name of the city of Paducah, are hereby granted to the city of Paducah."

Section 114 is as follows: "Upon all judgments of fines rendered by the city court, whether in favor of the Commonwealth or the city of Paducah, it shall be lawful for the· prosecuting attorney of the city court to cause a *fi. fa.* to be issued, to be levied on the estate of the defendant, or take a *capias pro fine*, requiring the imprisonment of the defendant in the city work-house or county jail, or confined at work upon the streets until the fine and costs are paid; but the person so imprisoned or confined shall have the·

City of Paducah v. Calhoun.

right, if he elects to do so, to discharge the same by labor in the city work-house, if there be one, or on the streets or public works of the city, at the rate of one dollar per day; and after agreeing so to do, every such person shall be bound to conform to the rules of the work-house or regulations for working on the streets, as it regards labor or discipline, unless, after he shall have made such election, he replevy or pay the judgment, or such part thereof as remains unpaid."

Appellee claims that the fees sought to be recovered were charged in cases where the parties convicted were worked by the city upon the streets in satisfaction of the fines and costs.

It is in proof by the marshal and his deputy that the return upon the *capias* in each of these cases where the fees are charged was either "delivered to the keeper of the lock-up" or "delivered to the overseer of the chain-gang;" that the placing of the prisoner in the "lock-up" was preliminary to his being taken charge of by the "overseer of the chain-gang" for the purpose of working him on the streets, and that during the years over which the charges of appellee extend the prisoners in the chain-gang were worked upon the streets.

The *capias pro fine* used in these cases is a form that was in use in the city court prior to the election of appellee, and is as follows:

"The Commonwealth of Kentucky, to the marshal of the city of Paducah: You are hereby commanded to take the body of —— and — safely keep so as to cause to be made the sum of —— dollars, fine adjudged against the said —— in the Paducah City Court. Also the sum of —— dollars and —— cents, as cost of prosecution; and in default of payment of said fine and costs, you deliver the body of said —— to the overseer of the chain-gang, to be by him con-

fined at work upon the streets of the city of Paducah, and. detained until discharged by due process of law, and make-due return to said court within thirty days.

"Given under my hand this — day of ——, 187—.

"————————, C. P. C. C."

This was, in substance, all the evidence heard, and appel--lant contends, first, that it is not enough to show that the-prisoners were worked by the city on the streets until the-several fines and costs against them were discharged; and, second, that, conceding the evidence sufficient to establish that fact, the city is not liable to account to appellee for fees. thus worked out.

The proper construction of section 114 of the charter appears to be this: The city attorney may cause to be issued a. *capias pro fine*, requiring one of three things—1st, confinement in the city work-house; 2d, confinement in the county jail, and 3d, confinement at work upon the streets until the-fine and costs are paid. The right of election in the prisoner as to whether he will work upon the streets or public works of the city does not arise, unless the *capias* directs his. confinement in the jail or work-house. This construction seems to be necessary in order that the whole of the section may be operative. The right of the city attorney to direct in the *capias pro fine* that the prisoner shall be worked on the streets until the fine and costs are satisfied, necessarily carries with it the right of coercion, and is modified by the subsequent clause only in so far as it prescribes the compensation to be allowed per day. The keeper of the "lock-up" and the "overseer of the chain-gang" are appointed by the city council, and their duties are regulated by such rules and regulations as the council may have prescribed, and when a prisoner is turned over to either of them under such a *capias*

as the one copied in this opinion, the clerk's power to coerce the payment of his fees by *fi. fa.* is taken away by this act of the city, and it becomes, by implication, debtor to the clerk for his fees in the particular case. The obligation on the part of the city to pay these costs becomes, under these circumstances, just as binding as if it had received the fine and cost under a *fi. fa.* issued under the direction of the city attorney. As, in the exercise of its power, the city by such proceeding has rendered it impossible for the clerk to make his fees, it appears to be unnecessary to inquire whether the prisoner was worked long enough to pay the whole of the fine and costs, but if it were necessary to establish that fact, we think the evidence was sufficient to justify the court in so finding. A *prima facie* case is made out for the appellee when he shows the issuance of such a writ and the delivery of the prisoner under it to the officer whose duty it is to see that the prisoner is employed as directed in the writ. It is peculiarly in the knowledge of the city whether the prisoner was so occupied, and it, for that reason, becomes incumbent on the city to rebut the *prima facie* case made out by appellee. The conclusion that the city is responsible for these fees is strengthened by section 181 of the charter, which provides that an allowance shall be made to the clerk for any services performed which the law does not specifically provide for. Appellee is taken from the category of the circuit court clerk, who is required to perform services gratuitously when the statute does not specify that he shall be paid for the particular services.

The provisions of the General Statutes in reference to clerks do not apply to the clerk of the city court, except in so far as the amount to be charged in particular instances is prescribed. Under the law applicable to clerks generally, no

fees are to be paid the clerk·in Commonwealth cases, unless a fine is assessed and collected. (General Statutes, art. 20, sec. 7, chap. 41, page 479 and page 464.) But in such cases the right to imprison under the *capias* extends only to the fine, and that, ·by the express provision of the law, does not satisfy it; proceedings may afterwards be had, for the satisfaction of the fine, against the defendant's property, and out of the operation of this provision of the law is expressly excepted "judgments in city or police courts, which may be discharged by confinement in the city work-house, according to the provisions of the special statutes regulating them." (Criminal Code, sec. 304.) But for the saving in that section, the defendant would be released from further liability by confinement for the length of time there prescribed.

A municipality is as much bound by an implied contract, when it is within its corporate power, as an individual. "The doctrine of implied municipal liability applies to cases where money or other property of a party is received under such circumstances that the general law, independent of express contract, imposes the obligation upon the city to do justice with respect to the same. If the city obtain money of another by mistake, or without authority of law, it is her duty to refund it—not from any contract entered into by her on the subject, but from the general obligation to do justice, which binds all persons, whether natural or artificial." (Argenti v. San Francisco, 16 Cal.) With ·equal justice will the law apply to a case like this when the city, in the exercise of a corporate power, has received the benefit of the labor of the prisoner, and by that act, satisfied the judgment and taken away the power of the clerk, by legal remedy, to make his fees, which have, in effect, been thus collected by the city and are now held by it. (Dillon on Municipal Cor-

porations, sections 383 and 384, and cases there cited; see also Wheeler v. Chicago, 24 Ill.)

We see nothing in the cases of Wortham v. Grayson County Court, Pollack's administrator v. Louisville, nor in Greenwood v. Louisville, 13 Bush, that is in conflict with the views expressed in this opinion.

We perceive no error in the ruling of the court sustaining exceptions to the evidence tending to show the solvency or insolvency of the prisoners; nor in the rejection of evidence as to the value of the fee-bills sued on, as to the cost for boarding the prisoners, or as to whether any other officer had attempted to claim against the city for services performed in such cases.

Judgment affirmed.